## THOMAS TINSLEY v. H. C. PENNIMAN.

### No. 502.

1. **Pleading—Protest Fees.**—Allegation that a draft was drawn by plaintiff upon defendant at the special instance and request, and for the sole use and benefit of defendant; that he failed to pay it; that it was protested for nonpayment, and the protest fees were $1.25, and that plaintiff paid the draft and protest fees, is sufficient pleading to warrant the recovery of such protest fees.

2. **Pleading—Exception—Statute of Limitation.**—Where plaintiff's petition does not show on its face that the contract sued on was not in writing, the defense of the two years' statute of limitation can not be interposed by exception, but must be presented by plea.

3. **Practice on Appeal.**—Where appellant brings up no conclusions of fact or law, if the judgment can be sustained on any theory of the evidence, it will not be disturbed.

4. **Contract in Writing—Limitations.**—For evidence showing a contract effected through letters and telegrams, and held sufficient as against the two years' statute of limitation, see the opinion.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE.

*G. G. Wright,* for appellant.—1. In order to make a liability for notary fees, there must be some intermediate indorser connected with the bill whose liability is sought to be fastened by the protest. 2 Dan. on Neg. Inst., secs. 932, 933.

2. An amendment which sets up a new cause of action will not relate back to the time of filing the original petition. Tinsley v. Penniman, 83 Texas, 54; Wortham v. Boyd, 66 Texas, 401; Henderson v. Kissam, 8 Texas, 46; Beal v. Alexander, 6 Texas, 532.

3. The statute of limitations of two years is a bar to a recovery on all causes of action for services rendered and moneys expended, from the time of service rendered and moneys expended, when not based upon written obligation. Williams v. Randon, 10 Texas, 73; McLane v. Belvin, 47 Texas, 493; Erskine v. Wilson, 20 Texas, 78; Carter v. Reynolds, 6 Texas, 561; Rev. Stats., art. 3203, subdiv. 4; McMillan v. Guest, 6 Texas, 283; Beirne & Burnside v. Kelsey, 21 Texas, 190; Bennett v. Hollis, 9 Texas, 437.

4. The instruments copied in the record do not constitute a written contract. Railway v. Rolling Mills, 119 U. S., 149; Carr v. Duval, 14 Pet. (U. S.), 77; Addison v. Jones, 12 Pet., 213; Bank v. Hall, 101 U. S., 43; Story on Con., sec. 1130.

*R. D. Coughanour* and *James W. Brown*, for appellee.—1. The court did not err in overruling defendant's first special exception to that part of plaintiff's petition setting up $1.25 as notary fees, because the facts were sufficiently pleaded to show that this fee was paid in the interest of defendant by the plaintiff.

2. The court did not err in rendering judgment for the plaintiff, because the record does not show that the amended petition set up a separate and distinct cause of action from the cause of action set out in the original petition. Hanrick v. Hanrick, 63 Texas, 618; Landa v. Obert, 78 Texas, 33; 60 Texas, 438; 82 Texas, 225; Parks v. Cotter, 80 Texas, 539.

LIGHTFOOT, CHIEF JUSTICE.—This suit was originally brought on a draft for $2270.90, drawn by appellee upon appellant, about May 15, 1888, in favor of the Fourth National Bank, and which, not being accepted or paid by the drawee, was taken up and paid by appellee, the drawer, together with $1.25 protest fees. This is the second appeal, the case having been before the Supreme Court in Tinsley v. Penniman, reported in 83 Texas, 54.

After the reversal of the case, the plaintiff below, H. C. Penniman, amended his pleadings and set out specifically what the draft was drawn for, in substance: That plaintiff is a real estate agent, and as such, sold for defendant some real estate in Dallas, Texas, amounting to about $33,500, of which $6000 was cash and the balance on time; that the premises were incumbered by a vendor's lien in favor of Henry Lively for $7196.88, which he paid, and $441.90 State and county taxes; that plaintiff charged $837.50 commission on the sale; that he paid out $7 for telegrams in perfecting the sale; and by an arrangement between himself, as such agent, and the vendees of the land, they paid one-half of such taxes and plaintiff paid the other half; also $3 for recording Lively's release; making in the aggregate $8265.25 which he paid out, which was $2265.25 more than said $6000 cash payment received on the sale of the premises; for which he drew his said draft, with one-fourth of 1 per cent, or $5.65, exchange—making in the aggregate $2270.90, the amount of the draft, which he avers was drawn "at the special instance and request, and for the sole use and benefit of defendant." That on May 21, 1888, said draft was presented to defendant for his acceptance and payment, which he refused, and that plaintiff paid off the same, together with the protest fees of $1.25. Plaintiff averred, that all of the items above mentioned which he paid over and above the $6000 collected as the first payment, were necessarily paid out by plaintiff for the purpose of closing said sale of said premises, as defendant had ordered and directed plaintiff to do. "Wherefore defendant became liable and bound and promised to pay plaintiff for his said services rendered as aforesaid, the reasonable value thereof, which plaintiff avers are correctly estimated as herein charged, and for the said several sums of money paid out by plaintiff

as aforesaid for the sole use and benefit of defendant, as herein charged, amounting in the aggregate, for said services rendered and moneys expended, to the sum of $2272.15, which he has failed to pay, though often requested.''

Upon the trial, the facts in regard to the trade were proved substantially as set out in the petition as above, and it was clearly shown that the trade was made by appellee under the written instructions of appellant; the $6000 cash received as the first payment was applied by appellee, under written instructions from the appellant, to the payment of the vendor's lien debt of Lively, and there was still due him $1196, which appellee had to pay before such trade could be completed. The correspondence between the parties shows that appellant fully recognized the claim for $837.50 due for commissions, and in a letter promised to pay said sum. The amount necessary to pay off the Lively vendor's lien was estimated by appellant at $1027.20, for which he authorized appellee in writing to draw a draft on him, through Oliver & Griggs. It was proved that the interest upon the vendor's lien debt was more than appellant calculated, and that such debt was really $1196, which appellee paid. It was further shown, that there was a controversy, after the trade had been agreed upon, in regard to the taxes, which were shown to be $441.90, and appellant authorized appellee in writing to pay one-half of this amount, viz., $220.95, which he did, also $3 for recording a release from Lively, and $7 for telegrams passed between plaintiff and defendant in closing the trade; that the draft embraced $5.65 exchange, and that the protest fees upon appellant's refusal to pay the draft were $1.25, all of which appellee paid.

The first assignment of error presented by appellant is as follows: ''The court erred in overruling defendant's first special exception to that part of plaintiff's petition setting up $1.25 as notary fees; because there were no facts pleaded upon which notary fees can be recovered.''

The pleading of appellee was amply sufficient to sustain this item. The plaintiff alleged, that the draft was drawn ''at the special instance and request, and for the sole use and benefit of defendant;'' that he failed to pay it; that it was protested for nonpayment and the protest fees were $1.25, and that appellee paid the draft and protest fees. It is difficult to see what more could have been stated in the pleading upon this subject. The court properly overruled this exception.

The second assignment of error is as follows: ''The court erred in overruling defendant's second special exception to that part of plaintiff's petition setting up that plaintiff was a real estate broker doing business in Dallas, Texas, and at the request of defendant, plaintiff rendered services to him in making a sale of certain real estate, and for money expended for defendant in consummating said sale, for which plaintiff claims liability from defendant; because more than two years had elapsed since said money was expended and services rendered by plaintiff to defendant, which facts were not pleaded until the

filing of plaintiff's first amended original petition, which was on the 14th day of March, 1892."

It is true that appellee's original petition was filed May 13, 1890; the amended petition was filed March 14, 1892, and the transaction took place in May, 1888. But it is not shown upon the face of the petition whether the agreement of appellant to pay for such matters was or was not in writing. Unless the petition showed upon its face that such contract was not in writing, limitation could not be interposed thereto by special exception, but it could only be reached by plea of limitation. The pleading of plaintiff alleged a contract, without setting out whether the same was verbal or written. Under such a declaration a written contract could be proved. Gonzales v. Chartier, 63 Texas, 37; Cross v. Evarts, 28 Texas, 531; Doggett v. Patterson, 18 Texas, 158. The special exception was properly overruled, because it did not appear from the face of the petition that the claim was barred by limitation, and if such was the case, in the absence of allegations in the petition showing such to be the fact, it could only be reached by special plea.

The third assignment raises the same question of limitation of two years in a different form, and is not well taken, for the reasons above given.

The leading question in the case is presented in appellant's fourth assignment of error, as follows: "The court erred in rendering judgment for plaintiff on the facts, because the plaintiff and witness Ardrey both testified, that the services rendered and money expended was done in March, 1888; when the amended petition for such recovery was not filed until March, 1892, thereby clearly showing the cause of action to be barred by the statute of limitation."

This assignment does not correctly state the date at which the trade was consummated and the money paid, which was in May, 1888, and the amendment was filed on March 14, 1892.

The case was tried by the court below without a jury. The appellant has brought up no conclusions of fact and law, and if the judgment can be sustained on any theory of the evidence, it will not be disturbed. 1. It was proved that on March 15, 1888, appellant, Tinsley, telegraphed to appellee, who was his agent, about the land trade, as follows: "If you can get $33,500, close the trade." This telegram had reference to the trade then pending, the details of which seemed to be understood between the parties. 2. On March 20, 1888, appellant, Tinsley, wrote to appellee two letters, in which he directed him to pay off the vendor's lien debt of Lively, paying a part of it with the $6000 cash payment to be received for the land, and for the balance he authorized his agent to draw upon him through Oliver & Griggs. He also says: "I shall be leaving here for Dallas as soon as I receive the above draft and notes, and will settle the commission with you when I see you in Dallas. I make your commissions to amount to $837.50." On the same day (March 20, 1888), he wrote: "This morning I forwarded you deed to the five lots on Main street.

Please attach the three purchase money notes, $9166.66 each, to your drafts on me. You can keep the trust deed until I see you in Dallas." On May 5, 1888, appellant again wrote in regard to the dispute over the taxes upon the property, of which it was proposed that the purchaser should pay half and the appellant half. He says: *"I authorize you to allow one-half of the taxes. For goodness sake, don't quibble over so small a matter."*

Appellant was evidently growing restless over the delay, and urged his agent to close the trade without quibbling over so "small a matter" as a few hundred dollars, when so much was involved. He authorized the trade in writing. He agreed in writing to pay the $837.50 commissions. He directed in writing the payment of the Lively vendor's lien, which was settled by the agent. He authorized and directed in writing the payment of one-half the taxes. He authorized and directed the entire trade through letters and telegrams, and evidently understood that appellee was to draw upon him for the amount of the Lively debt, when he said in his letter, "Please attach the three purchase money notes, $9166.66 each, to *your draft on me.*" It was fully shown by the testimony that appellee received the deed sent by appellant to him, delivered it to the vendees, received the cash payment, paid off the Lively vendor's lien and one-half the taxes, as directed, together with other incidental expenses, and received the three notes for $9166.66 each, "which he attached to the draft and delivered over to Oliver & Griggs, and the deed of trust securing them, which he first filed for record."

Under such a state of facts, we can not hold that the entire cause of action was barred by limitation, even if appellant's contention should be conceded that the amendment set up a new cause of action, which, however, admits of serious doubt, under the authority of Tinsley v. Penniman, 83 Texas, 54.

The fifth, sixth, and seventh assignments raise the question, in different forms, that the judgment is excessive. The judgment is for $3019.15, which is more than appellee is entitled to recover under the facts proved.

We think that appellee was clearly entitled to recover for the $1196.88 vendor's lien paid by him to Lively, the $220.95 taxes paid, and $837.50 commissions, all of which are evidenced by agreements and directions by appellant in writing, and that he was entitled to legal interest thereon from May 15, 1888, until the trial, which would aggregate the sum of $2995.84. These assignments are well taken, and the judgment should be reformed so as to allow a recovery for only the said sum of $2995.84, with interest thereon at 6 per cent per annum from the date of said judgment.

*Reformed and affirmed.*

Delivered October 17, 1894.

Writ of error refused.